UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BERTHA COLEMAN, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DISTRICT OF COLUMBIA, et al., <br><br> Defendants. | Civil Action 03-00126  (HHK) |

**MEMORANDUM**

Before the court is plaintiffs' motion for the attorneys' fees and costs they have incurred in prosecuting this lawsuit brought under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, a suit itself brought to recover attorneys' fees and costs incurred by plaintiffs in pursuing administrative actions against the District of Columbia Public Schools ("DCPS").[1]  In other words, the instant motion seeks "fees on fees."  The motion was referred to United States Magistrate Judge Deborah A. Robinson for her report and recommendation pursuant to LCvR 72.3.  The Magistrate Judge recommends that plaintiffs' motion be granted and that plaintiffs be awarded $37,984.32, the entire amount they seek.  Report and Recommendation ("Rep.") at 3.

Defendants object to the report and recommendation and contend that the attorneys' fees to which plaintiffs are entitled amounts to much less than $37,984.34.  Upon consideration of plaintiffs' motion, including the submissions that accompany the motion, defendants' opposition,

---

[1] The statute was re-authorized by and recodified as the Individuals With Disabilities Education Improvement Act when it was amended in 2004.  Individuals With Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004).  For the sake of continuity, however, the court will continue to refer to it as the IDEA.

the report and recommendation, defendants' objection thereto, and the response of plaintiffs to the objection, the court concludes that defendants' objection has merit and that plaintiffs are entitled to attorneys' fees and costs in the amount of $24,600.47.

## I.  BACKGROUND

On January 21, 2005, judgment was entered in plaintiffs' favor in the amount of $45,104.05.  This amount, $2,712.50 less than the amount claimed, represents the difference between the amount plaintiffs claim was due them as prevailing parties in eighteen administrative proceedings, either by virtue of favorable administrative rulings or through voluntary settlement agreements, and the amount they were paid before this suit was filed or before the date of judgment.  The court's judgment was accompanied by a memorandum that explains the rationale for the court's decision.

On April 22, 2005, plaintiffs filed the instant motion after the court denied defendants' motion to alter the judgment.  Plaintiffs' motion is accompanied by a memorandum, a declaration of one of the three attorneys who represents them, and a listing of attorneys' fees and expenses ("Fee Listing").  While conceding that plaintiffs are entitled to reasonable attorneys' fees and costs, defendants, in a 14-page opposition, set forth several arguments in support of their position that plaintiffs are entitled to substantially less than the amount they seek.

## II.  ANALYSIS

**A.     The Magistrate Judge's Report and Recommendation**

Finding that defendants' challenge to plaintiffs' fee motion is "predicated entirely upon arguments which the court has already rejected, or for which there is no authority," Rep. at 3, the report and recommendation makes short shrift of defendants' challenges.  As an example of an

argument "already rejected," the report references, by page number, a portion of defendants' memorandum in opposition and characterizes the arguments found there as amounting to no more than that "Plaintiffs' counsel's hourly rates are too high." Rep. at 4. Then, to substantiate the determination that defendants' argument is foreclosed, the report references, by page number, the court's memorandum and states, "[t]he court already held that '[P]laintiffs' counsel have demonstrated that they have both expertise and experience in the area of IDEA litigation[,]' and awarded attorneys' fees at counsel's billing rates." *Ibid.*

The report and recommendation does not withstand scrutiny. Defendants raise several specific objections that are not based on arguments "already rejected" and which can not be fairly characterized as stating only that "Plaintiffs' counsel's hourly rates are too high." For example, and most conspicuously, defendants object to the hourly rate for the activities of Lisa Noik and Patti Johnston, two non-lawyer employees of the firm that represents plaintiffs.[2] Because the

---

[2] Defendants set forth their objection, in part, as follows:

> Attached to the Motion is a "Listing of Attorneys' Fees" (hereinafter "Invoice") that is the basis for the reimbursement now requested. While the Invoice includes some $2,500 for activities by Lisa Noik and Patti Johnston, the Plaintiffs have provided *no information whatsoever* concerning those individuals. The hourly rate for Ms. Noik is shown as $125/hr, and she is shown to have spent 4.3 hours (for a total of $537.50) devoted to, among other things, 'prepar[ing] and mail[ing] letters to clients' and 'preparation of documents for Court, organization of exhibits; labeling of exhibits . . .' (Invoice, p. 7) — what appear to be secretarial functions for which *no* charge is appropriate.
> Ms. Johnston is invoiced for 12.6 hours at an hourly rate of $150, for a total of $1,890.00 (Invoice, pp. 8–9). Her time is devoted, besides conferring with counsel, to such things as preparing lists of clients and charts of fees and costs, collecting payment records and the 'final organization of exhibits' or the 're-organization of exhibits.'

Defs.' Opp'n at 4–5.

Magistrate Judge's report and recommendation, with one exception,[3] does not address defendants' challenges to plaintiffs' fee motion, the court will resolve the motion without regard to the report and recommendation, a task to which it now turns.

**B.      Hourly Rate for Non-Attorneys**

As mentioned above, defendants object to the hourly charges for Lisa Noik and Patti Johnston, respectively $125 and $150 per hour, in view of the lack of information provided about them in plaintiffs' Fee Listing.  In plaintiffs' reply (and for the first time), Ms. Noik is identified as a legal assistant and Mrs. Johnston as the office manager for plaintiffs' attorneys' firm. Plaintiffs argue that it is appropriate to bill at the rate indicated because "both [women] have college degrees, and office experience sufficient to be entrusted with the frequently complicated administrative, organizational and clerical tasks which they performed in this case." Pls.' Reply at 5.

---

[3] This exception is the Magistrate Judge's discussion of defendants' argument that plaintiffs should be reimbursed for their attorneys' services at a reduced rate because of the mundane nature of the legal work involved with IDEA "fees-on-fees " litigation.  The report and recommendation states:

> Defendants now suggest that counsel's billing rates are high in the context of "*services involved in seeking attorney's fees*[.]"  Defendants' Opposition at 8.  In support of the proposition that rate at which fees are awarded should be reduced because the pending motion is for "fees-on-fees[,]"  Defendants rely entirely upon an unpublished opinion in an action which is on appeal.  *Id.* at 7.  However, the undersigned knows of no published opinion which holds that Plaintiffs' counsel should reduce their billing rates when counsel seek an award of fees for the preparation of a fee petition.  The undersigned further funds that Defendants' argument flows from an unwarranted assumption that no "specialized expertise" is required to prepare a motion for an element of the relief which IDEA affords prevailing plaintiffs.

Rep. at 4 n.3.  For the reasons explained below, the court agrees that plaintiffs are entitled to their attorneys' fees at a rate that is not reduced simply because plaintiffs seek fees on fees.

Defendants' challenge to the hourly rates billed for Noik and Johnston is sustained. Given the tasks performed by Noik and Johnston and their apparent lack of legal training, there is no basis for billing their services at a rate that is in excess of the Laffey Matrix rate applicable for paralegals and law clerks.[4] Plaintiffs are entitled to bill for the activities of Noik and Johnson at no more than $50 per hour.

**C.     Hourly Rates for Attorneys**

Defendants next contend that plaintiffs should be reimbursed for their attorneys' services at a reduced rate, given the nature of the legal services provided when prevailing plaintiffs in IDEA cases seek fees on fees. Defendants argue that plaintiffs should not be reimbursed for their attorneys' fees at rates that reflect an attorney's "expertise and experience in substantive IDEA legal issues" in "litigation which entails only the demonstration and defense of attorney time charges." Defs.' Opp'n at 6. According to defendants, "[m]ost of the 'work' relating to the instant Motion was the accumulation and presentation of office time records — an exercise members of the Bar do promptly on a regular basis." *Ibid*.

In support of their position, defendants cite Magistrate Judge Kay's decision in *Smith v. District of Columbia*, 2005 WL 914773 (D.D.C. Apr. 18, 2005), a fees-on-fees action prosecuted by plaintiffs who were represented by the same attorneys who represent plaintiffs here. In *Smith,* Magistrate Judge Kay held, in pertinent part:

---

[4] The "Laffey Matrix" is prepared by the Civil Division of the United States Attorneys Office, and is commonly used by the courts in this judicial district in cases in which a "fee-shifting" statute permits the prevailing party to recover "reasonable attorneys' fees," such as 20 U.S.C. § 1415(i)(3)(B), which authorizes prevailing plaintiffs in IDEA cases to recover their attorneys' fees. *See Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D.D.C. 1983), *aff'd in part*, *rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *cert. denied*, 472 U.S. 1021 (1985).

> The Court . . . find[s] that the billing rates of Plaintiffs' two lead attorneys . . . should be adjusted downward to reflect the nature of the work performed in connection with this fee request. Specifically, the Court notes that the majority of Plaintiffs in this case have already prevailed in their prosecution of administrative complaints and the underlying lawsuit, both based on Plaintiffs' IDEA claims. This Court subsequently awarded Plaintiffs their attorneys' fees . . . , reflecting counsel's IDEA work and taking into account counsel's specialized knowledge and experience. This Motion now requests additional fees and costs incurred in seeking those fees and costs. This Court finds that fee litigation is not complex federal litigation and does not necessarily entail specialized expertise and experience. Therefore, the Court concludes that counsel's billing rates should be adjusted accordingly to reflect the type of work performed. Mr. Bogin's hourly billing rate will thus be adjusted from $320 to $250. Mr. Eig's hourly billing rate will be adjusted from $300 to $250. . . . Ms. Iseman's hourly rate remains unchanged at $200 per hour.

*Id.* at *3.

The court rejects defendants' argument. First, defendants have not shown, or even attempted to show, that IDEA fee litigation, including fees-on-fees litigation, is less complex than other federal litigation in which the Laffey Matrix is used as evidence of prevailing rates for litigation counsel in this area. A party's *ipse dixit* is not a sufficient substitute for such a showing, no matter how vigorously stated.[5] Second, the court rejects an approach for determining the appropriate hourly rate for attorneys fees that rests solely on a "conclusion," even the conclusion of an experienced judicial officer, that the rate is too high. Third, defendants' assertion that fee litigation is "work that is essentially commonplace law firm bookkeeping tabulation and mathematics," Defs.' Opp'n at 7, is simply wrong, and the distinction to which defendants refer between "substantive IDEA legal issues" and legal issues

---

[5] Defendants argue that "[t]he notion that hourly rates for substantive IDEA litigation which itself, it should be said, is not as complicated or demanding as the federal litigation contemplated by the Laffey Matrix) are appropriate for requests for attorney's fees is patently untenable." Defs.' Opp'n at 6. Saying it does not make it so.

that arise in the course of fee litigation, *id.* at 6, is superficial and immaterial.[6]  While defendants (and this court) may wish that IDEA fee litigation was "essentially commonplace law firm bookkeeping," it is not.  On this point, this court is in substantial agreement with the following rejoinder by plaintiffs to defendants' challenge to their attorneys' hourly rates:

> As this court is aware, this fee action is but one of several currently in this court, which plaintiffs have no choice but to bring when the District does not pay its bills, thereby forcing plaintiffs to litigate. (*See, e.g., Lax v. D.C.*, C.A. No. 04-1940 (HHK), currently pending in this court, in which plaintiffs spent nearly a year trying to resolve matters out of court by sending letters and emails to the District financial staff, ultimately filing suit, and only then, within weeks, receiving assurances of partial payments from defendants.) In each of these cases, defendants have challenged plaintiffs' entitlement on a wide variety of grounds, requiring plaintiffs to keep current on an almost daily basis with the status of rulings in this court, and to employ an approach to these challenges that frequently requires an experienced and historical perspective on the IDEA and cases brought thereunder.  In the instant case, for example, defendants attempted to raise the Congressional fee cap as a bar to the Court's authority to award attorneys' fees, and plaintiffs successfully convinced the Court otherwise; counsel less experienced with IDEA litigation may have taken a different understanding of the applicability of this cap, and been daunted by the spate of recent conflicting decisions in this Court (copies of which defendants attached to their Motion to Alter or Amend).  It is frankly preposterous for defendants to argue that the party that defeats them need not possess specialized experience or expertise.  Perhaps had plaintiffs demonstrated less expertise, this Court's decision might have followed the result so urged by defendants, as did the other decisions that defendants championed.

Pls.' Reply at 2–3.[7]

---

[6] The court also notes that fee-shifting provisions are an integral part of the statutory regimes enacted by Congress to effectuate the public policies embodied in legislation like the IDEA.  Without provisions to remedy violations of the rights contained in the IDEA, including provisions that enable parents to engage lawyers to assist them in prosecuting IDEA claims, the substantive rights of disabled students contained in the IDEA likely would be illusory.

[7] *Lax* is only one recent "fees on fees" action involving more than "commonplace law firm bookkeeping." *See also B.L. v. District of Columbia*, 2007 WL 1053223 (D.D.C. Apr. 9, 2007) (HHK).

In sum, the court rejects defendants' argument that plaintiffs are entitled to anward of attorneys' fees based on a reduced hourly rate for IDEA fees-on-fees litigation. Defendants' objection to the hourly rate claimed for attorney Iseman is well taken, however.[8] As defendants point out, plaintiffs' claim for attorney's fees for Iseman's services is based on a rate, $250, that is substantially higher than the appropriate rate indicated by the Laffey Matrix. Plaintiffs do not dispute defendants' contention. Plaintiffs will be awarded attorney's fees for Iseman's recoverable services at the Laffey Matrix rate(s).

**D.     Other Objections**

Defendants argue that the documentation provided by plaintiffs in support of their fee motion is not sufficiently detailed and probative to enable the court to determine with the requisite degree of certainty whether the number of hours for which reimbursement is sought, here the "equivalent of more than three 40-hour work-weeks," Defs.' Opp'n at 8, were "actually and reasonably expended," *Role Models of Am. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004) (quoting *In re Olson*, 884 F.2d 1415, 1428 (D.C. Cir. 1989). With respect to this element of defendants' objection, defendants raise the following four specific challenges:

*1.     Duplication and Overlap of Activities*

Defendants argue that plaintiffs' Fee Listing reveals inappropriate and unexplained duplication of effort, particularly in entries describing attorney conferences. Defendants identify sixteen entries for Ms. Eisman that include conferences with plaintiffs' two other attorneys,

---

[8] Defendants point out that "Mr. Eig's declaration says Ms. Iseman 'has been a practicing attorney for five years,' and the current (2004–2005) rate in the Laffey Matrix for that category is $225; rates for that category were even less during the time when most of the work here at issue was done." Defs.' Opp'n at 7.

fifteen such conferences for Mr. Eig, and half of the entries for Mr. Bogin. Defendants find particularly objectionable a conference among plaintiffs' attorneys on February 10, 2005, "on general subjects which appear to have nothing to do with the demonstration or defense of time spent in this case," resulting in a billing in the amount of $2,205. Defs.' Opp'n at 9 n.3.

Plaintiffs respond to this objection by asserting that the time devoted to attorney conferences was appropriate because "each individual case has the potential for impact far beyond its own parties." Pls.' Reply at 4. As for defendants' objection regarding the February 10, 2005 conference, plaintiffs explain as follows:

> Certainly, when a seemingly minor issue such as [the Court's authority to award fees that exceeds a Congressionally imposed payment cap that] has such potential to undermine the IDEA litigation that is our livelihood, it is nothing but sound professional practice for the three co-counsel with much at stake to have opinions and ideas on how best to approach each (possibly) major challenge. It goes without saying that differing opinions and ideas require conferences among the co-counsel. Too, we cannot predict how this case might have gone had these skilled attorneys not discussed this litigation and how best to proceed; using this practice, we successfully litigated this case, and should not be penalized for doing so.

*Id.* at 4–5 (footnote omitted).

Defendants' objection to plaintiffs' claim for attorneys fees attributable to their attorneys conferences with one another, fairly characterized by plaintiffs as "livelihood"-related conferences, is sustained. While it may well be that such brainstorming between plaintiffs' attorneys is sound professional practice, such conferences are not recoverable in this or any other case.[9] Plaintiffs will not be awarded attorneys' fees for the February 10, 2005 attorney

---

[9] This court view these conferences as being akin to subject specific, in-service, continuing legal education activities. While plaintiffs will not be reimbursed for the time their attorneys spent conferring with one another, it is the need for such conferences and other means of staying abreast of IDEA fee litigation issues that underlies this court's judgment that plaintiffs should be awarded their attorneys' fees at an hourly rate that is not reduced.

conference and, because the court agrees with defendants that the number of attorney conferences that are case- and task-specific are excessive, plaintiffs will be awarded attorneys' fees reflecting a 50% reduction for such conferences.

    *2. Activity Associated with Attorneys' Communications with Plaintiffs*

Defendants challenge the charges indicated in plaintiffs' Fee Listing for what they characterize as "soliciting the consent of prospective plaintiffs to be included in the complaint ultimately [filed in this case]." Defs.' Opp'n at 9. Citing *Role Models*, defendants argue that such activities are not properly included in an award of attorneys' fees. Plaintiffs respond that the circumstances addressed by the court in *Role Models* — a law firm's inadequate time record that, among other things, reported unspecified amounts of time spent drafting and revising the firm's engagement letter — are not similar to the circumstances here. Plaintiffs explain that here, their attorneys' communications were not for the purpose of soliciting prospective clients but were for the purpose of communicating with existing clients regarding the statuses of their cases.

The court agrees with plaintiffs that their attorneys' communications with them regarding the statuses of their cases are activities for which fees are properly sought.

    *3. Charges for Preparing Fee Motion Pleadings*

Defendants also assert that the attorneys' fees sought for crafting the instant motion and the submissions that accompany the motion ("fee motion pleadings") are excessive because they are boilerplate and should not have taken as long to produce as plaintiffs claim (at least 6.15 hours). Defendants ask the court to compare the motion pleadings here — a one-page motion, a four-page memorandum, and a two-page declaration — with the motion pleadings in three other fees-on-fees actions where the plaintiffs were represented by the same attorneys who represent

plaintiffs here.  *See District of Columbia v. Reusch*, No. 04-cv-0226 (D.D.C.); *Spilsbury v. District of Columbia*, No. 02-cv-0374 (D.D.C); *Solomon-Lane v. District of Columbia*, No. 99-cv-2404 (D.D.C).  Defendants contend that the submissions are virtually identical and argue that "charging $2000 for at most changing a case caption is plainly excessive."  Defs.' Opp'n at 11.

Defendants also object to charges for "reconstructing timeslips and 'editing' the 'fees list.'"  *Ibid.*  Defendants assert that these activities are purely administrative matters, not representational activities for which attorneys' fees are properly claimed.

Plaintiffs respond to defendants' challenge as follows:

> While the Court filing in question (Plaintiffs Memorandum in Support of Motion for Attorneys' Fees and Costs) mirrors language used in previous Court filings — in this case and others — it is not correct, as defendants assert, that preparing these documents required "at most, changing a case caption."  On the contrary, each case has unique aspects that are reflected throughout the memorandum, and it requires care to ensure that the facts are correct.  Additionally, the memorandum contains citations to caselaw, which counsel reviews on each use to ensure that it remains good law, and to add any recent changes.

Pls.' Reply at 3 n.1

With respect to defendants' objection regarding billing for reviewing and editing of time slips, plaintiffs respond that this task is more than an office business matter but is one that requires "legal judgment" to remove any charges that were not for work that was productive and necessary for the plaintiffs to prevail.  *Id.* at 6.

Defendants' objections regarding the billings for preparing the motions pleadings in this case and the editing of time slips are sustained.  In responding to defendants' argument, insofar as it pertains to their memorandum, plaintiffs do not address the argument as it relates to the other documents that comprise the motions pleadings, the motion itself and the declaration of

Michael J. Eig. Doubtless, that is because the one page motion and two page declaration contain the same text, except for their caption, dates, and dollar amounts, as appears in the counterpart papers used in the other cases that the court has reviewed. Yet plaintiffs' Fee Listing indicates that on February 2, 2005, Ms. Iseman spent an unspecified part of the one hour and forty-eight minutes she devoted to drafting motions pleadings to "Draft[ing] Motion." The Fee Listing also indicates that on April 3, 2005, the drafting of the "Declaration of Michael J. Eig" took over a half hour to accomplish. It does not appear that any "drafting" of the motion or declaration of Mr. Eig took place here. Rather, duplicates of papers "drafted" earlier were used and very little time, certainly no more than fifteen minutes, is properly billed to changing the caption on these papers. As for the memorandum, it contains text not contained in the memoranda in the other cases which undoubtedly reflects the unique aspects of this case and the court credits plaintiffs' assertion that it is appropriate to bill the time that is recorded in the Fee Listing to "to ensure that the facts are correct." The court, however, does not believe that significant time is warranted for counsel's review of the same familiar case law that appears in the memorandum that also appears over and over again in the pleadings prepared by plaintiffs' counsel in other cases. The court will award 50% of the attorneys' fees sought for the preparation of the motions pleadings in this case.[10]

    *4. Inadequate Description of Activities*

Citing *Role Model*, defendants argue that a significant number of the entries in plaintiffs' Fee Listing are deficient in various respects. These entries, they contend, lump together multiple

---

[10] The court is in complete agreement with defendants that fees for time devoted to time slip editing and accounting data maintenance are not recoverable.

tasks (making it impossible to evaluate their reasonableness) and/or are impermissibly vague and inadequately detailed.  Defendants point to several examples of such deficient entries, including the following:

| Date | Description | Hours Billed | Billed Amount |
| --- | --- | --- | --- |
| 11/22/02 | Conference with co-counsel; preliminary and follow up review of documentation complaint | 1.5 | $525 |
| 1/10/03 | Conference with co-counsel and further review of client documentation for litigation | 1 | $350 |
| 5/29/03 | Conference with co-counsel and review of exhibits | .5 | $175 |
| 10/28/03 | Work on fee pleadings and declaration; conference on filing | 1.5 | $525 |

In response to these challenges, plaintiffs proclaim that it is "eminently clear" that "each time entry relates to a particular litigation activity, and is on its face, evidence of what work plaintiffs' counsel performed to what activity that work related, and how much time was expended."  Pls.' Reply at 3.

Defendants' objection is sustained.  Many of the Fee Listing entries are vague, lacking in detail, and do not reveal what plaintiffs say they reveal.  Indeed, many of the entries suffer from the same deficiencies as the documentation in support of a fee motion that was considered in *Role Models*, a decision which plaintiffs virtually ignore.  The court's fee award for activities referenced by such entries will be reduced by 50%.

### III.  SUMMARY

The court reduces the claimed fees as follows:

| Attorney/Paralegal | Reduction |
|---|---|
| Lisa Noik ($50/hr cap) | $322.50 |
| Patti Johnston ($50/hr cap) | $1,260.00 |
| Haylie Iseman[11] | $6,076.88 |
| Michael Eig[12] | $4,567.50 |
| Matthew Bogin[13] | <u>$1,121.00</u> |
| **TOTAL** | **$13,347.88** |

### IV.  CONCLUSION

For the reasons stated above, it is this 3rd day of May, 2007, hereby

**ORDERED** that plaintiffs' motion for attorneys' fees and costs is **GRANTED** in the amount of $24,600.47.

                                                                               Henry H. Kennedy, Jr.
                                                                               United States District Judge

---

[11] Ms. Iseman's Laffey Matrix rates are $175 for June 2002 through May 2003, $220 for 2003–04, and $224 for 2004–05.  Her billing entries for 11/13/02, 1/15/03, 5/27/03, 5/28/03,10/28/04, 1/21/05, 2/3/05 (first three entries), and 2/4/05 (first and third entries) are each further reduced by 50%; her entries for 2/2/05, 2/4/05 (second entry), 2/10/05, and 4/19/05 are each reduced by 100%.

[12] Mr. Eig's billing entries for 11/22/02, 1/10/03, 5/29/03, 10/28/03, 12/16/03, 12/21/03, 1/12/04, 2/3/05 (first entry), 2/4/05 (both entries), and 2/5/05 are each reduced by 50%; his entries for 2/1/05, 2/10/05, and 4/19/05 are each reduced by 100%.

[13] Mr. Bogin's entry for 1/10/03 is reduced by 50% and his entries for 2/10/05 and 4/8/05 are each reduced by 100%.